**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MICHAEL RAY NORMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV997 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Michael Ray Norman, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 13; <u>see also</u> Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum); Docket Entry 15 (Plaintiff's Reply)). For the reasons that follow, the Court should remand this matter for an award of benefits.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for SSI.  (Tr. 338-43.)  Upon denial of that application initially (Tr. 172-85, 219-22) and on reconsideration (Tr. 186-200, 228-37), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 238-40).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 123-71.)  The ALJ subsequently ruled that Plaintiff qualified as disabled under the Act since May 13, 2012, the alleged onset date.  (Tr. 201-12.)  The Appeals Council thereafter issued a notice (Tr. 284-88) that it planned to "set aside the favorable hearing decision and send [Plaintiff's] case back to an [ALJ] for more action and a new decision" (Tr. 285).  After considering argument and new evidence submitted by Plaintiff's counsel (see Tr. 458-59),  the Appeals Council entered an order remanding the case to an ALJ  for further proceedings.  (Tr. 213-19.)

Plaintiff, his attorney, a medical expert ("ME"), and a VE attended the second hearing.  (Tr. 53-122.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under Act.  (Tr. 7-27.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 48-51, 479-82), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

2

1.	[Plaintiff] has not engaged in substantial gainful activity since July 26, 2012, the application date.

2.	[Plaintiff] has the following severe impairments: status post deep laceration to the right wrist with repair; status post left ankle injury and surgical repair; knee pain due to internal derangement of the knee; chondromalacia; borderline intellectual functioning; substance addiction; r/o mood disorder; and r/o anti-social personality.

.  .  .

3.	[Plaintiff's] impairments, including the substance abuse disorder, meet section 12.04 (Affective Disorders) of 20 CFR Part 404, Subpart P, Appendix 1.

.  .  .

4.	If [Plaintiff] stopped the substance use, the remaining limitations would cause more than a minimal impact on [Plaintiff's] ability to perform basic work activities; therefore, [Plaintiff] would continue to have a severe impairment or combination of impairments.

5.	If [Plaintiff] stopped the substance use, [Plaintiff] would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

.  .  .

6.	If [Plaintiff] stopped the substance use, [Plaintiff] would have the residual functional capacity to perform light work . . . except that he is limited to frequent but not continuous pushing and pulling with the right upper extremity with no limitation in pushing or pulling with the left extremity.  He can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds.  He can engage in occasional balancing, stooping, crouching, and crawling.  He can engage in handling and fingering with the right hand that is frequent but not continuous.  There are no manipulative limitations with the left upper extremity.  He should avoid concentrated exposure to the operational control of moving machinery and working at unprotected heights.  He is also limited to performing simple routine repetitive

tasks in a low stress work setting that involves only
occasional changes in the work setting and has no pace or
production requirements.    He can handle occasional
interaction with the public and coworkers and can respond
appropriately to supervision.

. . .

7.    If   [Plaintiff]   stopped   the   substance   use,
[Plaintiff] would be unable to perform past relevant
work.

. . .

11. If   [Plaintiff]   stopped   the   substance   use,
considering   [Plaintiff's]   age,   education,   work
experience, and residual functional capacity, there would
be a significant number of jobs in the national economy
that [Plaintiff] can perform.

. . .

12.   The substance use disorder is a contributing factor
material   to   the   determination   of   disability   because
[Plaintiff] would not be disabled if he stopped the
substance use.   Because the substance use disorder is a
contributing factor material to the determination of
disability, [Plaintiff] has not been disabled within the
meaning of the . . . [Act] at any time from the date the
application was filed through the date of this decision.

(Tr.   13-27   (bold   font   and   internal   parenthetical   citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."   Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).   However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."   Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

4

Even given those limitations, the Court should remand this case for an award of benefits.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age,

---

[2] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of
(continued...)

## B. Assignment of Error

In Plaintiff's sole issue on review, he contends that "[t]he ALJ failed to form a logical bridge between the evidence and her conclusions regarding Plaintiff's ability to use his right hand and [that] those conclusions are not supported by substantial evidence." (Docket Entry 11 at 4 (bold font omitted).) More specifically, Plaintiff notes that Plaintiff's "claim for disability was initially approved by ALJ Michael Hazel [after the first hearing] pursuant to an RFC for light work with no use of [Plaintiff's] right hand for lifting and only occasional use for overhead reaching, handling, fingering, pushing or pulling for less than two hours per day." (Id. (citing Tr. 208).) According to Plaintiff, the Appeals Council "remanded ALJ Hazel's decision because it did not give adequate consideration to the effects of [Plaintiff's] alcohol dependence on his intellectual functioning" (id. at 5 (citing Tr. 214-15), but "specifically noted that '[it] ha[d] not raised any issue with respect to [Plaintiff's] ability to use his right hand'" (id. (citing Tr. 216)). Plaintiff faults ALJ Helen O. Evans for advising Plaintiff's "counsel at the [second] hearing[] that she would be reevaluating the entire RFC" (id. (citing Tr. 63-65, 88-90, 97)), and for "act[ing] extra-judicially

---

[5] (...continued)
the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

in upping Plaintiff's RFC to frequent use of his right hand" in violation of <u>Albright</u>, 174 F.3d at 477 (Docket Entry 11 at 5). In that regard, Plaintiff contends that the Appeals Council "specifically affirmed ALJ Hazel's findings with respect to Plaintiff's ability to use his right hand, [which] became the final decision of the Commissioner and was subject to *res judicata*." (<u>Id.</u>)

Lastly, Plaintiff argues that, even if *res judicata* did not attach to ALJ Hazel's findings respecting Plaintiff's right hand, ALJ Evans "failed to articulate why [Plaintiff] was capable of using his right hand frequently as opposed to no lifting and only occasionally for other activities as ALJ Hazel and [consultative examiner] Dr. [Stephen] Burgess found." (<u>Id.</u>) In particular, Plaintiff asserts that ALJ Hazel "included a rote recitation of some of the medical evidence in the case, much of which militate[d] in [Plaintiff's] favor . . ., but at no point d[id] [the ALJ] provide a logical bridge between this evidence and her right hand RFC finding for frequent use." (<u>Id.</u> at 6 (citing <u>Monroe v. Colvin</u>, 826 F.3d 176, 189-90 (4th Cir. 2016), and <u>Hutchins v. Colvin</u>, No. 1:15-cv-186-FDW, 2016 WL 3513397, at *3 (W.D.N.C. June 27, 2016) (unpublished)).) Plaintiff deems "very harmful" the "ALJ's errors regarding the medical evidence of [Plaintiff's] [right upper extremity] impairment, because the VE at the second hearing . . . testified that if [Plaintiff] were limited to occasional use of the

[right upper extremity] for handling and fingering, there would be no jobs he could perform." (Id. at 11 (citing Tr. 114-15) (internal citation omitted).) Plaintiff contends that "the ALJ's decision should be reversed for an award of benefits[,] as on the state of the record, [Plaintiff's] entitlement to benefits is wholly established (as ALJ Hazel had originally found)" (id. at 11-12 (citing Crider v. Harris, 624 F.2d 15, 17 (4th Cir. 1980)), or, "[i]n the alternative, . . . remanded for proper evaluation of the medical evidence and for the ALJ to articulate how her RFC findings are supported by that evidence" (id. at 12). Plaintiff's contentions ultimately warrant relief.

1. Res Judicata

The recent decision of the United States Court of Appeals for the Fourth Circuit in Monroe forecloses Plaintiff's argument that the Appeals Council "specifically affirmed ALJ Hazel's findings with respect to Plaintiff's ability to use his right hand, [which] became the final decision of the Commissioner and was subject to res judicata," and that ALJ Evans "acted extra-judicially in upping Plaintiff's RFC to frequent use of his right hand" in violation of Albright, 174 F.3d at 477. (Docket Entry 11 at 5.) In Monroe, the claimant argued that the ALJ "erred in not affording great weight to the findings [a prior ALJ] made regarding [the claimant's] severe impairments in [a] . . . decision" vacated by the Appeals

Council.  Monroe, 826 F.3d at 186-87.  The Fourth Circuit rejected

the claimant's argument under the following reasoning:

> The fact that the Appeals Council vacated [the first
> ALJ's] decision and remanded for a new decision is
> dispositive here.  The [Social Security Administration
> ("SSA")] treats the doctrine of res judicata as applying
> when it has "made a previous determination or decision
> . . . on the same facts and on the same issue or issues,
> and this previous determination or decision has become
> final by either administrative or judicial action."  20
> C.F.R. §§ 404.957(c)(1), 416.1457(c)(1) (emphasis added);
> see Lively v. Secretary of Health and Human Servs., 820
> F.2d 1391, 1392 (4th Cir. 1987) ("Congress has clearly
> provided by statute that res judicata prevents
> reappraisal of both the Secretary's finding and his
> decision in Social Security cases that have become
> final.")  Here, [the first ALJ's] decision, having been
> vacated, never became final, and thus the doctrine of res
> judicata did not apply.
>
> [The claimant] maintains that our decisions in Lively and
> Albright[], and Social Security Acquiescence Ruling 00-
> 1(4), 65 Fed. Reg. 1936-01 (Jan. 12, 2000) [("AR 00-
> 1(4)")], require a different result.  That is not the
> case, however.  Interpreting Albright and Lively, [AR]
> 00-1(4) explained that "where a final decision of SSA
> after a hearing on a prior disability claim contains a
> finding required at a step in the [SEP] for determining
> disability, SSA must consider such finding as evidence
> and give it appropriate weight in light of all relevant
> facts and circumstances when adjudicating a subsequent
> disability claim involving an unadjudicated period.  65
> Fed. Reg. at 1938 (emphasis added).  Nothing in that
> rule, or in our circuit precedent, indicates that
> findings in prior non-final decisions are entitled to any
> weight.  See 20 C.F.R. §§ 404.981, 416.1481 ("The Appeals
> Council's decision, or the decision of the [ALJ] if the
> request for review is denied, is binding unless you or
> another party file an action in Federal district court,
> or the decision is revised."  (emphasis added)).
> Accordingly, [the second ALJ] did not err in considering
> [the claimant's] applications de novo.

Monroe, 826 F.3d at 186-87.

In reply, Plaintiff attempts to distinguish Monroe by arguing that, "[w]hile it is true that *res judicata* does not apply to those portions of an ALJ's decision vacated by the [Appeals Council], the [Appeals Council] vacated the first ALJ's decision in this case with respect to his inadequate evaluation of the effects of alcohol abuse on [Plaintiff's] mental limitations (Tr. 214-15) and then noted the following:

> [Plaintiff's] representative then argues that [Plaintiff's] drug and alcohol abuse would not affect the use of his right hand.  This argument misstates **the issue on remand**.  We have not raised any issue with respect to [Plaintiff's] ability to use his right hand.  The issue is the affect [sic] [Plaintiff's] drug and alcohol abuse has on his ability [to] sustain attention and concentration for the completion of simple, routine, and repetitive tasks throughout a typical workday." (Docket Entry 15 at 1 (emphasis by Plaintiff) (citing Tr. 216).)

According to Plaintiff, the Appeals Council "left the prior ALJ's findings with respect to [Plaintiff's] limitation to only occasional use of his right hand (Tr. 208) undisturbed." (Docket Entry 15 at 1-2.)  Plaintiff's arguments fail.

The wording of the Appeals Council's remand order contradicts Plaintiff's position that it ordered only a partial remand restricted to the impact of Plaintiff's alcohol abuse on his mental impairments:

> Under the authority of 20 C.F.R. 416.1477, the Appeals Council vacates the hearing decision and remands this case to an [ALJ] for further proceedings.
>
> Upon remand, the [ALJ] will:
>
> . . .

13

- As appropriate, [give] further consideration to [Plaintiff's] maximum [RFC] and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.

(Tr. 216 (emphasis added) (internal citation omitted).) Thus, despite the fact that the Appeals Council did "not raise[] any issue with respect to [Plaintiff's] ability to use his right hand" in the order of remand, the Appeals Council's order vacates ALJ Hazel's underlined entire decision and directs the new ALJ to, among other things, underlined revisit Plaintiff's RFC (Tr. 216). See Karriker v. Berryhill, No. 1:16CV21, 2017 WL 722012, at *1, 6 n.5 (M.D.N.C. Feb. 23, 2017) (unpublished) (Peake, M.J.) (holding that, where Appeals Council vacated prior ALJ's decision for, inter alia, further consideration of the plaintiff's maximum RFC, the ALJ did not violate AR 00-1(4) or Albright by omitting prior ALJ's limitation regarding five-minute breaks in RFC), recommendation adopted, slip op. (M.D.N.C. Mar. 17, 2017) (Schroeder, J.).

In sum, ALJ Evans did not run afoul of Albright or AR 00-1(4) by revisiting Plaintiff's RFC at the post-remand hearing, or by declining to adopt, on the basis of res judicata, ALJ Hazel's limitations regarding Plaintiff's right upper extremity.

2. Right Upper Extremity Restrictions

Plaintiff further asserts that the ALJ failed to cite to substantial evidence to support her RFC finding that Plaintiff

14

remained able to use his right hand to lift and carry at the light level of exertion and to frequently push, pull, handle, and finger. (See Docket Entry 11 at 5-12; see also Docket Entry 15 at 2-4; Tr. 19.) Plaintiff has ultimately demonstrated entitlement to remand for an award of benefits on this basis.

First, Plaintiff complains that the ALJ provided "a rote recitation of some of the medical evidence in the case, much of which militate[d] in [Plaintiff's] favor (Dr. Burgess'[s] and [physician assistant Barbara] Beck's examinations (see Tr. 15-16)), but at no point does she provide a logical bridge between this evidence and her right hand RFC finding . . . ." (Docket Entry 11 at 5-6.) According to Plaintiff, "[i]n Monroe, the Fourth Circuit stressed that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to her ultimate findings[.]" (Id. at 6 (citing Monroe, 826 F.3d at 189-90).) This assertion misses the mark because, in the portion of the ALJ's decision cited by Plaintiff, the ALJ described evidence that supported her finding that the residual symptoms from Plaintiff's right wrist injury constituted a severe impairment at step two of the SEP (see Tr. 13-16) (and therefore, caused more than a minimal effect on Plaintiff's ability to perform work-related activities, see Social Security Ruling 96-3p, Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment

is Severe, 1996 WL 374181, at *1 (July 2, 1996)), rather than her finding that Plaintiff retained the RFC to use his right arm frequently (see Tr. 19-25).

Next, Plaintiff faults the ALJ for citing to the finding of consultative psychological examiner Dr. John F. Warren that Plaintiff's gait, posture, and motor coordination exhibited no "apparent defect or abnormality" (Docket Entry 11 at 6 (quoting Tr. 21, 1132) (emphasis added)), because Dr. Warren practices psychology, did not conduct a physical examination of Plaintiff, and noted in his report that Plaintiff could not use his arm and hand (id. at 6-7 (citing Tr. 1132-37)).  The ALJ's reference to Dr. Warren's "general observations" (Tr. 1132 (capitalization omitted)) with regard to Plaintiff's gait, posture, and coordination does not constitute error because, by including Dr. Warren's modifier "apparent," the ALJ signaled her acknowledgment that Dr. Warren did not conduct physical testing of those attributes.  (See Tr. 21.) Accordingly, the ALJ's citation to Dr. Warren's report does not constitute error, but does lack significance in assessing whether substantial evidence supports the ALJ's findings regarding Plaintiff's right arm.

Plaintiff additionally challenges the ALJ's reliance on examinations of Plaintiff "when he was following up for his left ankle fracture where . . . only his left lower extremity muscle groups and functioning were evaluated."  (Docket Entry 11 at 7

16

(citing Tr. 21, 1286, 1300, 1333).)  As an initial matter, the ALJ did not cite to transcript pages 1286, 1300, or 1333 (all contained within Exhibit 10F) in the portion of her decision supporting the RFC.  (<u>See</u> Tr. 20-25.)  Furthermore, to the extent the ALJ did cite examinations reflecting follow-up for Plaintiff's left ankle fracture, the ALJ did not err, as (at the beginning of the paragraph in question), the ALJ stated that "many medical records contradict [Plaintiff's] allegations of <u>debilitating lower extremity pain</u> and upper extremity weakness."  (Tr. 21 (emphasis added).)  In other words, the ALJ properly could cite examinations regarding Plaintiff's left ankle to support the portion of the ALJ's determination that medical records did not support Plaintiff's reports regarding his left ankle.[6]

Plaintiff also criticizes the ALJ's reliance on Plaintiff's activities of daily living to support the RFC, as "the record demonstrates that [Plaintiff] did not use his right hand to perform these activities, but his left, or he had someone help him." (Docket Entry 11 at 7 (citing Tr. 20-21, 94-96, 407-09, 415-16, 1396, 1452).)  A review of the ALJ's discussion of Plaintiff's daily activities demonstrates that the ALJ improperly glossed over Plaintiff's inability to perform such daily activities <u>with his</u>

---

[6] To the extent Plaintiff argues that the records in question do not support the ALJ's findings regarding Plaintiff's right arm, however, the undersigned Magistrate Judge agrees.

17

<u>right upper extremity</u>.  (<u>See</u> Tr. 20-21.)  The ALJ reasoned as follows:

> Although [Plaintiff] alleges such debilitating physical and mental symptoms that he is unable to work, his reported activities of daily living do not support these allegations.  For example, during a consultative examination of August 2012, [Plaintiff] reported that he always bathes and dresses himself without assistance or reminders except that his sister sometimes helps him to wash his hair.  He further indicated that he always manages his own finances without assistance; always prepares his own meals; and always shops for food, clothing, and other essentials. [Plaintiff's] sister indicated [] in a third party function report that [Plaintiff] prepares simple meals on a daily basis and shops in stores every day.  During a consultative physical examination of December 2013, [Plaintiff] reported being able to fold laundry, use a vacuum, wash a few dishes, cook, dust, make beds, do some light cleaning, and manage his own dressing and hygiene. During a consultative examination of March 2015, [Plaintiff] stated that he was able to go to the grocery store, [and] that he did very little housework due to social habit rather than physical limitations.  He indicated that he could sweep, fold laundry, use a vacuum cleaner, cook light meals, dust, and do light cleaning. He also indicated that he managed his own dressing and hygiene. All of these activities of daily living reflect [Plaintiff's] ability to perform work-related activities in some form or fashion.  Although he may not be able to perform them at the same level as he did prior to the onset of his impairments, the undersigned finds that [Plaintiff] is able to perform them in some limited capacity and has reflected these limitations in the above-formulated [RFC].

(<u>Id.</u> (internal citations omitted).)

The ALJ's above-quoted analysis lacks any qualification that Plaintiff could not perform most of those activities using his right hand.  (<u>Compare</u> <u>id.</u>, <u>with</u> Tr. 407-13 (reflecting Plaintiff's sister's repeated statements of Plaintiff's difficulty or

incapacity to engage in various daily activities due to his inability to use his right hand), 1132 (reporting Plaintiff's statements to consultative examiner Dr. Warren that his right hand constituted the "main problem . . . that prevents [him] from being able to work" and that he "can't use" his right hand), 1396 (containing Plaintiff's remark to consultative examiner Dr. Burgess that his "right hand is not available to perform <u>any</u> sort of work that requires strength or fine motor activity" (emphasis added)), 1397 (documenting Plaintiff's assertion to Dr. Burgess that he "can only use [his right] hand for brief period of support"), 1452 (recording Plaintiff's contentions to Dr. Burgess that he can "sweep[] by using [his] right hand as a fulcrum," and that he can vacuum and perform "a little dusting and . . . light cleaning with [his] left hand").) Thus, Plaintiff's significantly limited ability to engage in daily activities with his right hand, borne out by the record, cannot provide substantial evidence to support the ALJ's RFC findings related to Plaintiff's right upper extremity.

Lastly, Plaintiff challenges the ALJ's decision to afford Dr. Burgess's opinions "partial weight" on four grounds. (Docket Entry 11 at 10-11 (citing Tr. 24, and referencing Tr. 1396-1407, 1451-61).) Plaintiff's challenge to the ALJ's evaluation of Dr. Burgess's opinions has merit as well.

The ALJ provided the following analysis with respect to Dr. Burgess's opinions:

> In December 2013, consultative examiner Dr. Burgess opined as follows: "[Plaintiff's] ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, pushing and pulling heavy objects, as well as the ability to hear or speak, appears to be mildly impaired due to the sum of the physical findings described above. [Plaintiff's] insight into and description of limitations appears consistent with the objective findings." The [ALJ] assigns partial weight to these opinions as they are also based on a single observation of [Plaintiff] and do not adequately reflect [Plaintiff's] symptoms as shown in the remaining medical evidence.
>
> In March 2015, consultative examiner Dr. Burgess opined as follows: "[Plaintiff's] ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, pushing and pulling heavy objects, as well as the ability to hear or speak, appears to be mildly impaired due to the sum of the physical findings described above. [Plaintiff's] insight into and description of limitations appears consistent with the objective findings." Dr. Burgess also indicated that [Plaintiff] can frequently lift and carry up to 10 pounds; occasionally lift up to 50 pounds; occasionally carry up to 20 pounds; never carry more than 20 pounds; never lift more than 50 pounds; . . . reach continuously with the right hand; handle, finger, feel, push, and pull occasionally with the right hand . . . . The undersigned assigns partial weight to these opinions as Dr. Burgess is not a treating source. His examination also included no objective range of motion testing to substantiate his conclusions.

(Tr. 24 (emphasis added).)

First, Plaintiff faults the ALJ for failing to discuss the objective motor loss, sensory loss, and hyperalgesia Dr. Burgess found on examining Plaintiff's right wrist and hand. (Id. at 11 (citing Tr. 24); see also Tr. 1398, 1453-54).) At the first

20

consultative examination, Dr. Burgess expressly found Plaintiff's right wrist tender, that Plaintiff could not make a fist with his right hand (see Tr. 1398), and that Plaintiff's grip strength rated at two kilograms of force on the right as opposed to 20 to 30 kilograms on the left (see Tr. 1399). Dr. Burgess essentially replicated those findings at the second consultative examination (which the ALJ had expressly ordered post-hearing (see Tr. 473-74)). (See Tr. 1453-55.) Although the ALJ discussed some of these relevant findings in her step two discussion, she also erroneously stated that Dr. Burgess found Plaintiff's grip strength normal bilaterally. (See Tr. 16.) As Plaintiff points out, "the 5/5 strength notation was just typical unaltered boilerplate earlier on in [Dr. Burgess's] report (Tr. 1399[; see also Tr. 1454]) and that the strength assessment from the actual 'objective testing' section" reflects Plaintiff's significant loss of grip strength on the right (see Tr. 1399, 1455 (finding four kilograms of force on the right and 50 to 52 kilograms on the left)). (Docket Entry 15 at 3.) Thus, the ALJ's error regarding the results of Dr. Burgess's grip strength testing of Plaintiff's right hand undermines the ALJ's conclusion that Dr. Burgess's opinions "do not adequately reflect [Plaintiff's] symptoms." (Tr. 24.)

Second, Plaintiff challenges the ALJ's statement that Dr. Burgess did not include any "objective range of motion testing to substantiate his conclusions." (Docket Entry 11 at 11 (citing Tr.

24).)  Again, Plaintiff correctly points out that, "in both examinations, Dr. Burgess did test [Plaintiff's] right wrist extension and flexion, and in both, his [range of motion] was limited."  (Id. (citing Tr. 1398, 1453.)  In fact, Dr. Burgess also found the range of motion in Plaintiff's finger joints decreased in both examinations.  (See Tr. 1398-99, 1454.)  Accordingly, the ALJ's erroneous conclusion regarding the purported lack of objective range of motion testing by Dr. Burgess cannot support the ALJ's decision to discount Dr. Burgess's opinions.

Third, Plaintiff argues that the ALJ's "assignment of 'partial weight' to Dr. Burgess's opinions . . . tells us nothing about which parts of [his] opinion the ALJ found to be supported and which she did not."  (Docket Entry 11 at 11 (citing Mascio v. Colvin, 780 F.3d 632, 640 (4th Cir. 2015).)  Indeed, the ALJ's affording of "partial weight" to Dr. Burgess's opinions remains ambiguous under the facts of this case.  (Tr. 24.)  In the first consultative examination, Dr. Burgess found that Plaintiff's ability to lift and carry qualified as "mildly impaired" (Tr. 1400), but then limited Plaintiff to lifting and carrying at the medium level of exertion only with his left hand, while using the right hand for "brief actions" (Tr. 1401), a limitation which the ALJ did not discuss (see Tr. 24).  Thus, the ALJ did not clarify whether she gave partial weight to Dr. Burgess's opinion because (1) she felt that Plaintiff's right hand impairment caused even

greater limitations than those found by Dr. Burgess, such that Plaintiff could only lift and carry at the light level of exertion; or (2) that Plaintiff's hand injury resulted in fewer restrictions than those opined by Dr. Burgess, because Plaintiff could lift and carry using both hands.

Similarly, in the second consultative examination, Dr. Burgess again found that Plaintiff's ability to lift and carry qualified as "mildly impaired" (Tr. 1455), but then limited Plaintiff to lifting 10 pounds frequently and 50 pounds occasionally (in between the light and medium levels of exertion) and carrying at the light level of exertion (Tr. 1456). In the section requesting "particular medical or clinical findings . . . which support your assessment of any limitations and why the finding support the assessment," Dr. Burgess indicated: "[right] hand injury - pain/nerve damage prevents use of [right] hand." (Tr. 1456 (emphasis added).) Accordingly, the ALJ did not make clear whether she gave partial weight to Dr. Burgess's opinion because (1) she felt that Plaintiff's right hand impairment caused even greater limitations than those found by Dr. Burgess, such that Plaintiff could only lift at the light level of exertion; or (2) that Plaintiff's hand injury resulted in fewer restrictions than those opined by Dr. Burgess, because Plaintiff could lift and carry using

both hands.  This ambiguity renders the ALJ's analysis of Dr. Burgess's opinions unsupported by substantial evidence.[7]

Fourth, the ALJ found that Dr. Burgess's opinions "d[id] not adequately reflect [Plaintiff's] symptoms as shown in the remaining medical evidence" but failed to identify such inconsistent "remaining medical evidence."  (Tr. 24.)  As Plaintiff argues (see Docket Entry 11 at 11), the ALJ failed to explain how Beck's evaluation did not support Dr. Burgess's opinions.  Notably, Beck found "[s]ignificantly decreased grip strength to [the] right hand, [t]enderness over the carpal tunnel on [the] right[,] [p]ositive Tinel's sign over the carpal tunnel on [the] right[,] Phalen's and reverse Phalen's sign positive on [the] right[,] [w]eakness mainly to [the] median nerve distribution with diminished strength to [the] radial and ulnar nerves as well [as] on [the] palmar aspect of [the] right hand[,] [and] palmar aspect of [the] right hand [with] diminished sensation."  (Tr. 1468 (emphasis added).)  Not only did the ALJ fail to explain how those findings might conflict with the findings and opinions of Dr. Burgess (see Tr. 24), but the ALJ did not even discuss these significant findings in her decision

---

[7] Although state agency consultant Ellen Huffman-Zechman found in November 2012 at the reconsideration level that Plaintiff remained able to lift at the medium level of exertion with no manipulative limitations (see Tr. 195-96), the ALJ assigned "partial weight" to that opinion as "without the benefit of viewing the entire record as it was available at the time of the hearing [or] . . . the benefit of hearing [Plaintiff's] testimony or observing [Plaintiff] in person[,] [and] [Plaintiff's] testimony, coupled with the medical evidence of record, indicates that his impairments pose more of a limitation to his ability to perform work-related functions than originally determined" (Tr. 22-23 (emphasis added)).

at all and erroneously indicated that Beck found Plaintiff's sensation "normal" and his strength "normal" except his "lower left extremity" (Tr. 21). Given the significant consistency between Beck's and Dr. Burgess's findings, the ALJ's incorrect recitation of Beck's examination findings cannot support her decision to discount Dr. Burgess's opinions.

Furthermore, the ALJ also did not specifically discuss or support her apparent rejection of Dr. Burgess's critical, outcome determinative finding that Plaintiff could only occasionally handle, finger, feel, push, and pull with the right hand. (See Tr. 1458; see also Tr. 1403 (providing that Plaintiff could only occasionally reach overhead, handle, finger, push, and pull and could never feel with his right hand).) At the hearing, the VE testified that an individual limited to occasional contact with the public and only occasional use of his right hand would not remain able to engage in any competitive employment. (See Tr. 114-15.) Although the ALJ gave ALJ Hazel's opinions from the prior decision "partial weight," she did not expressly discuss ALJ Hazel's findings that Plaintiff could not lift with his right hand and could only occasionally use his right hand for certain manipulative movements (see Tr. 208). (Tr. 23.) Moreover, the ALJ discounted ALJ Hazel's opinions because "his decision suggest[ed] that he relied heavily on a consultative examiner's opinion that was based on a single examination of [Plaintiff] and [Plaintiff's] self-

reported limitations." (Id.) However, as Plaintiff emphasizes, Dr. Burgess's opinions did not constitute "simply a parroting of [Plaintiff's] subjective statements[,] [but] w[ere] based on . . . [grip] strength testing[,] . . . his inability to write or pick up coins . . ., [or] form a fist with his right hand[,] as well as his limited range of motion with the muscle groups and tendons of his right hand." (Docket Entry 15 at 4 (citing Tr. 1398).)

In sum, the ALJ lacked substantial evidence to support her findings that Plaintiff remained able to lift at the light level of exertion using his right hand and to engage in frequent handling and fingering with his right hand. "If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify or reverse the ALJ's ruling 'with or without remanding the cause for a rehearing.'" Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (quoting 42 U.S.C. § 405(g)). Here, a remand for further proceedings would serve no useful purpose, but instead only would result in further, unnecessary delay, because the record as a whole does not contain substantial evidence that would warrant rejection of Dr. Burgess's findings (which, paired with the VE's testimony, entitle Plaintiff to a favorable disability determination). See Crider, 624 F.2d at 17 (finding reversal for award of benefits warranted where, "[o]n the state of the record, [the claimant's] entitlement to benefits is wholly established"); Smith v. Astrue, No. 3:10-66-HMHJRM, 2011 WL 846833,

at *3 (D.S.C. Mar. 7, 2011) (unpublished) ("Whether to reverse . . . for an award of benefits or remand for a new hearing rests within the sound discretion of the district court.") (citing <u>Edwards v. Bowen</u>, 672 F.Supp. 230, 237 (E.D.N.C. 1987)).

## II. CONCLUSION

Plaintiff has established an error warranting a reversal for an award of benefits.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be reversed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be granted, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be denied, and that the matter be remanded for an award of benefits.


 /s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 8, 2017